765 P.2d 997

**In the Matter of the ESTATE OF Edward Frank MUDER, Deceased.**

**Linda LIND and Janet Hiscoe, Petitioners–Appellants,**

v.

**Retha MUDER, Respondent–Appellee.**

**No. CV–88–0063–PR.**

Supreme Court of Arizona, In Banc.

Dec. 6, 1988.

Frost & Porter, P.C. by G. Terris Porter, Show Low, for petitioners-appellants.

Joseph Julius Hessinger, P.C. by Joseph Julius Hessinger, Pinetop, for respondent-appellee.

CAMERON, Justice.

## I. JURISDICTION

Respondent seeks review of the decision and opinion of the court of appeals, which reversed the trial court's admission of Edward Frank Muder's will to probate. We have jurisdiction pursuant to Ariz.Const. art. 6 § 5(3), A.R.S. § 12–120.24 and Ariz. R.Civ.App.P. 23.

## II. ISSUE

We must determine whether the purported will is a valid holographic will pursuant to A.R.S. § 14–2503.

## III. FACTS

Edward Frank Muder died on 15 March 1984. In September 1986, Retha Muder, the surviving spouse, submitted a purported will dated 26 January 1984 to the probate court. The purported will was on a preprinted will form set forth as Exhibit A.

The daughters of Edward Muder by a previous wife contested the will. They were unsuccessful in the trial court and appealed to the court of appeals. A divided court of appeals reversed. *In re Estate of Muder*, 156 Ariz. 326, 751 P.2d 986 (1988). We granted Retha Muder's petition for review.

## IV. WAS THE DOCUMENT A VALID WILL UNDER A.R.S. § 14–2502?

The right to make a will did not exist at common law. It is a statutory right. 1 W. Bowe & D. Parker, *Page on the Law of Wills* at 62–63 (1960). Because the legislature has the power to withhold or to grant the right to make a will, its exercise may be made subject to such regulations and requirements as the legislature pleases. *In re Estate of Wilkins*, 54 Ariz. 218, 221, 94 P.2d 774, 775 (1939).

■ It is apparent that this was not a proper formal will pursuant to statute because only one witness signed.

Except as provided for holographic wills, ... every will shall be in writing signed by the testator or in the testator's name by some other person in the testator's presence and by his direction, and shall be signed by *at least two* persons each of whom witnessed either the sign-

ing or the testator's acknowledgment of the signature or of the will.

A.R.S. § 14–2502 (emphasis added).

■ Also, the document does not meet the requirements for a self-proved will. The self-proving affidavit does not state that the testator signed or acknowledged his signature, or the will, in the presence of witnesses. A.R.S. § 14–2504; *See In re Estate of Mackaben,* 126 Ariz. 599, 601, 617 P.2d 765, 767 (App.1980).

We agree with the court of appeals that the will is not valid under the formal will statute, A.R.S. § 14–2502.

## V. IS THE DOCUMENT A VALID HOLOGRAPHIC WILL?

■ To serve as a will, the document must indicate that the testator had testamentary intent. *In re Estate of Blake v. Benza,* 120 Ariz. 552, 553, 587 P.2d 271, 272 (App.1978); *see also In re Estate of Harris,* 38 Ariz. 1, 296 P. 267 (1931). Testamentary intent requires that the writing, together with whatever extrinsic evidence may be admissible, establish that the testator intended such writing to dispose of his property upon his death. *Blake,* 120 Ariz. at 553, 587 P.2d at 272.

■ Because this will fails under A.R.S. § 14–2502, it is only valid if it can be considered a holographic will under the statute that provides:

A will which does not comply with § 14–2502 is valid as a holographic will, whether or not witnessed, if the signature and the material provisions are in the handwriting of the testator.

A.R.S. § 14–2503. This section was enacted in 1973 and replaced the previous holographic will statute that stated:

A holographic will is one entirely written and signed by the hand of the testator himself. Attestation by subscribing witnesses is not necessary in the case of a holographic will.

A.R.S. § 14–123 (1956).

Under the previous statute, no printed matter was allowed on the document. Litigation resulted because often a testator would write his holographic will on paper containing printed letterheads. Such printed matter was obviously not in the testator's handwriting. To avoid the harsh result of denying such holographic wills admission to probate, courts created the "surplusage theory." This theory held that the statutory words "wholly" or "entirely" were satisfied when the material provisions of the will were "wholly" or "entirely" in the handwriting of the testator, and that other written or printed material could accordingly be disregarded as surplusage. Arizona adopted the surplusage theory to preserve the validity of such holographic wills. *See In re Estate of Schuh,* 17 Ariz. App. 172, 173, 496 P.2d 598, 599 (1972); *see also In re Estate of Morrison,* 55 Ariz. 504, 510, 103 P.2d 669, 672 (1940) (it was important that the testamentary part of the will be wholly written by the testator and signed by him).

With the increased use of printed will forms, states with statutes similar to our previous statute requiring that a holographic will be *entirely* in the handwriting of the testator, applied the surplusage theory to the printed will forms by disregarding the printed matter and then looking to see if what was left made sense and could be considered a valid will. *See Estate of Black,* 30 Cal.3d 880, 641 P.2d 754, 181 Cal.Rptr. 222 (1982); *Succession of Burke,* 365 So.2d 858 (La.Ct.App.1978); *Watkins v. Boykin,* 536 S.W.2d 400 (Tex.Civ.App. 1976); *see also In re Estate of Johnson,* 129 Ariz. 307, 630 P.2d 1039 (App.1981).

California considered this issue because its statute required that a holographic will must be entirely written, dated, and signed by the hand of the testator himself and that any matter printed that was incorporated in the will provisions had to be considered part of the will. *Estate of Black,* 30 Cal.3d 880, 883, 641 P.2d 754, 755, 181 Cal.Rptr. 222, 223 (1982). The will in *Black* was a document that was handwritten on three pages of a partially preprinted stationer's form. *Id.* The court upheld the will by finding that none of the incorporated material was either material to the substance of the will or essential to its validity as a testamentary disposition. *Id.* at 885, 641 P.2d at 757, 181 Cal.Rptr. at 225. As Justice Richardson stated:

No sound purpose or policy is served by invalidating a holograph where every statutorily required element of the will is concededly expressed in the testatrix' own handwriting and where her testamentary intent is clearly revealed in the words as she wrote them. Frances Black's sole mistake was her superfluous utilization of a small portion of the language of the preprinted form. Nullification of her carefully expressed testamentary purpose because of such error is unnecessary to preserve the sanctity of the statute.

*Black,* 30 Cal.3d at 888, 641 P.2d at 759, 181 Cal.Rptr. at 227.

We believe that our legislature, in enacting the present statute, A.R.S. § 14–2503, intended to allow printed portions of the will form to be incorporated into the handwritten portion of the holographic will as long as the testamentary intent of the testator is clear and the protection afforded by requiring the material provisions be in the testator's handwriting is present.

Indeed, our statute states:

B. The underlying purposes and policies of this title are:

. . . .

2. To discover and make effective the intent of a decedent in distribution of his property.

A.R.S. § 14–1102(B)(2).

In the instant case, there is no question as to the testator's intent. We hold that a testator who uses a preprinted form, and in *his own handwriting* fills in the blanks by designating his beneficiaries and apportioning his estate among them and signs it, has created a valid holographic will. Such handwritten provisions may draw testamentary context from both the printed and the handwritten language on the form. We see no need to ignore the preprinted words when the testator clearly did not, and the statute does not require us to do so.

We find the words of an early California decision persuasive:

If testators are to be encouraged by a statute like ours to draw their own wills, the courts should not adopt upon purely technical reasoning a construction which would result in invalidating such wills

. . . .

*In re Soher's Estate,* 78 Cal. 477, 482, 21 P. 8, 10 (1889) (quoted with approval by *Estate of Black,* 30 Cal.3d 880, 884, 641 P.2d 754, 756, 181 Cal.Rptr. 222, 224 (1982)).

## VI. RELIEF

We vacate the opinion of the court of appeals and affirm the judgment of the trial court admitting the will to probate.

GORDON, C.J., and FELDMAN, V.C.J., concur.

EXHIBIT A

# 𝕿𝖍𝖊 𝕷𝖆𝖘𝖙 𝖂𝖎𝖑𝖑 𝖆𝖓𝖉 𝕿𝖊𝖘𝖙𝖆𝖒𝖊𝖓𝖙

7733

OF

_Edward Frank Muder_

I, _Edward F Muder_, a resident of _Shumway, in the County of Navajo, State of Arizona_ the _____ of _____, which I do declare to be my domicile, being of sound and disposing mind and memory, do make, publish and declare this to be my last will and testament, hereby revoking all wills or codicils to wills previously made by me.

FIRST: I direct that all my just debts and obligations, including funeral expenses, and the expenses incident to my last illness be paid as soon after my death as practical.

SECOND: I give, devise and bequeath of this my gross estate, after all of my just debts, expenses, taxes and administration cost of the estate have first been paid, settled or compromised, to _To my wife Retha F Muder, Our home & property in Shumway, Navajo County; Car - Pick up, Travel Trailer, & all other Earthly possessions Belonging To Me, Live stock cattle sheep etc Tools, Savings Accounts Checking Accounts, Retirement Benefits etc_

THIRD: I nominate, constitute and appoint my _Wife Retha, F Muder_ _____ as Executor (Executrix) of my estate.

FOURTH: I nominate, constitute and appoint my _Wife; Retha, F Muder_, _____ as guardian of the person and property of each minor child of mine who shall survive me.

IN WITNESS HEREOF, I, _Edward F Muder_ the testator (testatrix), sign my name to this instrument this _26th OF_ day of _January_, 19 _84_, and being first duly sworn, do hereby declare to the undersigned authority that I sign and execute this instrument as my last will and that I sign it willingly, that I execute it as my free and voluntary act for the purposes therein expressed, and that I am eighteen years of age or older, of sound mind, and under no constraint or undue influence.

_Edward F Muder_
TESTATOR (TESTATRIX)

© 1979, Alpha Enterprises — P.O. Box 26326 — Tucson, AZ 85726

7734

WE, _____, _____,

_____, the

witnesses, sign our names to this instrument, being first duly sworn, and do hereby declare to the undersigned authority that the testator (testatrix) signs and executes this instrument as his (her) last will and that he (she) signs it willingly, and that each of us, in the presence and hearing of the testator (testatrix), hereby signs this will as witness to the testator's signing, and that to the best of our knowledge the testator (testatrix) is eighteen years of age or older, of sound mind and under no constraint or undue influence.

_____ resides at _____

_____ resides at _____

_____ resides at _____

_____ resides at _____

## ACKNOWLEDGEMENT*

STATE OF _Arizona_ )
COUNTY OF _Maricopa_ )

SUBSCRIBED, SWORN to and acknowledged before me by, _Edward F Muder_ the testator (testatrix) and subscribed and sworn to before me by _Edward F Muder_, _____,

_____, _____,

the witnesses, this _26_ day of _February_, 19_84_

_Helene P. Matley_
SIGNATURE OF OFFICER

_Notary_,
OFFICIAL CAPACITY OF OFFICER

MY COMMISSION EXPIRES:
My Commission Expires Mar. 1, 1986

My Commission Expires Mar. 1, 1986

---

MOELLER, Justice, dissenting.

As the majority correctly notes, there is no common law right to make a will. To be entitled to probate, a document must meet the applicable statutory criteria. The majority opinion of the court of appeals and Judge Haire's persuasive special concurrence amply demonstrate that the document in this case does not comply with Arizona's holographic will statute, A.R.S. § 14–2503. The statute is clear: in a holographic will the "signature and the material provisions" must be in the handwriting of the testator. The majority reads into the statute a provision that printed portions of a form may be "incorporated" into the handwritten provisions so as to meet the statutory requirements. I am unable to

discern such expansiveness in the statute. Neither was the court of appeals in the recent case of *In re Estate of Johnson,* 129 Ariz. 307, 630 P.2d 1039 (App.1981), which was decided under the identical statute and in which we denied review. *Johnson,* if followed, compels the conclusion that the instrument in this case is not a valid holographic will; however, the majority opinion neither discusses, distinguishes, or disapproves of *Johnson.*

I am sympathetic to the majority's desire to give effect to a decedent's perceived testamentary intent. However, the legislature has chosen to require that testamentary intent be expressed in certain deliberate ways before a document is entitled to be probated as a will. Whether the holographic will statute should be amended to take into account the era of do-it-yourself legal forms is a subject within the legislative domain. I suspect the ad hoc amendment engrafted on the statute in this case will prove to be more mischievous than helpful. Because I believe there has been no compliance with the statute on holographic wills, I respectfully dissent.

HOLOHAN, J., joins in the dissent of MOELLER, J.